Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000473
28-APR-2017
08:34 AM

NO. CAAP-15-0000473

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
THEODORE KAWIKA KAOHU, JR., Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 11-1-1756)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge; Fujise and Leonard, JJ.)

Defendant-Appellant Theodore Kawika Kaohu, Jr., (**Kaohu**)

appeals from the Judgment of Conviction and Sentence (**Judgment**)

filed on May 19, 2015, in the Circuit Court of the First Circuit

(**Circuit Court**).[1] Following a jury trial, Kaohu was convicted of

two counts of Sexual Assault in the First Degree, in violation of

Hawaii Revised Statutes (**HRS**) § 707-730(1)(b) (2014) (Counts 1

and 2); and three counts of Sexual Assault in the First Degree,

in violation of HRS § 707-730(1)(a) (2014) (Counts 4, 5, and 6).[2]

---

[1]     The Honorable Dean E. Ochiai presided over the hearing on the
motion to reconsider, and the sentencing.  The Honorable Michael D. Wilson
presided over the trial, and all other matters.

[2]     HRS § 707-730 provides in relevant part:

        **§ 707-730 Sexual assault in the first degree.** (1) A
    person commits the offense of sexual assault in the first
    degree if:

                                                    (continued...)

Kaohu was sentenced to consecutive twenty-year terms of imprisonment as to Counts 1, 2, and 4, and concurrent twenty-year terms as to Counts 5 and 6, to be served concurrently to the term imposed for Count 4.

I.    BACKGROUND

On December 7, 2011, Plaintiff-Appellee the State of Hawai'i (**State**) filed an indictment against Kaohu on the following counts:  two counts of Sexual Assault in the First Degree in violation of HRS § 707-730(1)(b) (Counts 1 and 2); Sexual Assault in the Third Degree in violation of HRS § 707-732(1)(b) (Count 3); five counts of Sexual Assault in the First Degree in violation of HRS § 707-730(1)(a) (Counts 4, 5, 6, 7, and 8); and one count of Sexual Assault in the Fourth Degree in violation of HRS § 707-733(1)(a) (Count 9) (**Indictment**).[3]

On January 23, 2013, Kaohu moved to dismiss Counts 3 and 9 on the grounds that the Indictment failed to allege all essential elements of the offenses (**Motion to Dismiss**), arguing that the charges set forth in Counts 3 and 9 are fatally defective in that the essential element that Kaohu is not married to the actor is not stated.  The State argued that "'a person not

---

[2](...continued)

    (a)    The person knowingly subjects another person to an act of sexual penetration by strong compulsion;

    (b)    The person knowingly engages in sexual penetration with another person who is less than fourteen years old;

. . . .

    (2) Sexual assault in the first degree is a class A felony.

[3]    The Indictment is based on allegations of sexual assault committed against a minor complainant, who we will refer to as the CW.

married to the actor' cannot be an essential element" of Count 3 because Count 3 is specific to minor victims under fourteen years of age and thus, the "complaining witness could not legally marry within the State of Hawaii[.]" As to Count 9, the State conceded that the phrase "a person not married to the actor" is an essential element of Sexual Assault in the Fourth Degree and thus, should have been included in the Indictment. The Motion to Dismiss was denied.

On February 5, 2013, Kaohu filed a Motion to Sever Counts 1-3 from Counts 4-9, which was also denied.

On May 8, 2013, the State filed a Motion to Determine Voluntariness of Statement to the Police by Defendant (**Motion to Determine Voluntariness**). The State declared that Officer Kaina observed CW "talking to [Kaohu] on her cellular phone. [CW] was crying and told [Kaohu], 'I am tired of all this sex shit!' Officer Kaina then put the phone to her ear and heard [Kaohu] respond, 'I haven't touched you in a long time, Baby.'" The State submitted that Kaohu's statement was voluntary, and not the result of custodial interrogation. On May 22, 2013, Kaohu filed an opposition to the State's Motion to Determine Voluntariness. The Circuit Court held a hearing on August 7, 2013. Following Officer Kaina's testimony and the parties' arguments, the Circuit Court stated:

> Looking at the issue of voluntariness pursuant to HRS Section 621-26 and considering the totality of the circumstances and the testimony of the officer in this case and the records and the files which I take judicial notice of, I do find that at the time the statement was made, it was sufficiently reliable to be identified as [Kaohu's] statement. And [Kaohu] at that time was not in custody, was not subjected to questioning, and made the accordingly voluntary statement on the telephone that was overheard by

the police officer so the statement is deemed voluntary at this time.

In addition, after the Circuit Court posed a question to the State about what the State's response would be to an objection that CW's statement – "I'm tired of all this sex shit" – was hearsay, the court ruled that was an excited utterance, and that it was "relevant to the government's response to the defense in this case."

On July 30, 2013, the State filed a Motion in Limine requesting, *inter alia*, an order:

> 3.     Excluding and precluding from use at trial any past sexual history evidence of the [CW] as irrelevant and unfairly prejudicial.  Specifically, any reference to and questioning regarding a prior incident when [CW] was about thirteen to fourteen years old and she was raped by several boys at school; and any reference to and questioning regarding [CW's] relationship and/or sexual history with her step-brother.  Any inquiry into the [CW's] past sexual history and/or incident's of past sexual abuse should be precluded based upon [Hawaii Rules of Evidence (HRE)] Rule 412. Additionally, any mention of [CW's] promiscuity is irrelevant and unduly prejudicial under HRE Rule 403.

> 4.     Excluding and precluding from use at trial any files, reports, and/or letters pertaining to the [CW's] schooling and/or employment history as irrelevant and unfairly prejudicial under HRE Rule 403.  Specifically, any behavior assessment and performance assessment tests administered at school, and any conclusions and results of these tests.  This includes statements about [CW's] emotional behavioral difficulties and ability to associate with her peers as they affect her emotional, educational, and career life goals.

> 5.     Excluding and precluding from use at trial any reference to or questioning regarding [CW's] prior hospitalization and the reasons for the hospitalization. This includes any mention of [CW's] psychological history and mental health treatment for her bipolar, Attention Deficit Hyperactive Disorder, and Oppositional Defiant Disorder diagnoses. It also includes any references to [CW's] depression, attempts to kill herself, and incidents cutting her arm, as well as [CW's] prescription medication.

> 6.     Excluding and precluding from use at trial any reference to [CW] breaking the glass jealously [sic] windows and acting violently.

At an October 16, 2013 hearing, as to paragraph 3, the Circuit Court ruled that any testimony regarding CW "reporting of

rapes to the school by boys" was excluded. In reaching its determination, the Circuit Court found that such testimony was not "sufficiently relevant to justify admission in this case and would be a violation of Rule 412[.]" The court also granted the State's request as to paragraphs 4, 5 and 6, stating:

> I don't find a sufficient relevance between the [CW's] mental health history as recited in paragraphs four and five and the facts that are alleged in this case. The prior incidents that might have involved breaking of jalousies or acting out violently do not appear to be identified in a particular time that would pertain to the incidents in this case, nor do those actions seem to be relevant to her state of mind just regarding the allegations in this case.
>
> Her mental health disorder, if she did have one, has not been identified to include a habit of misrepresentation, or the diagnosis doesn't include her being unable to identify the difference between telling the truth and not[.]

Jury selection occurred on August 7 and 8, 2013. The case proceeded to trial on November 6, 2013. The State elicited testimony from CW, Officer Kaina, Star Kaohu-Scorse (**Star**), Christina Wolcott (**Wolcott**), and Detective Elizabeth Rockett. Kaohu elicited testimony from Deidra Kaohu (**Deidra**), and Desiree Kaohu (**Desiree**). Kaohu testified on his own behalf.

At the time of trial, CW was twenty years old. CW related that Kaohu was her mother's boyfriend, and that she viewed him as a "father figure." CW testified that Kaohu subjected her to acts of sexual penetration and sexual contact. The first incident reportedly occurred when she was about twelve years old. CW testified that she was sleeping next to her sister, and "woke up with somebody touching my thigh area." CW stated that Kaohu touched her thigh and vaginal area.[4] CW did

---

[4] Detective Rockett testified that when CW used the word "vagina," she was referring to "the female genitalia." Detective Rockett also referred to CW's use of "butt" as synonymous with "anus" or "anal opening."

not say anything because Kaohu did not know she was awake. The next day, CW told Kaohu's sisters, Deidra and Desiree, about what happened the previous night. CW said she felt "as if they didn't believe [her.]"

The second incident also occurred between August 23, 2005 and June 7, 2007, when CW was roughly twelve years old. CW testified that Kaohu called CW into her sister's room. CW related that Kaohu grabbed her butt area, removed her clothes, and placed his fingers and penis into her vaginal opening. CW testified that Kaohu threatened to "hurt [her] and [her] mom" if she told anyone what happened.

The third incident occurred between April 1, 2011 and May 31, 2011 when CW was seventeen years old. CW testified that Kaohu entered her room while she was playing video games. Kaohu instructed CW to remove her clothes. CW testified that she felt "scared and alone[,]" and "knew [she] couldn't say anything." CW testified that Kaohu placed his fingers into her vaginal opening. CW testified that Kaohu inserted his penis into her mouth. Shortly thereafter, Kaohu inserted his penis into her vaginal opening and anal opening.

The fourth incident occurred between August 30, 2011 and August 31, 2011 when CW was eighteen years old. CW testified that Kaohu provided alcohol at her birthday party. After the party ended, CW testified that Kaohu touched her thigh and vagina area, and then inserted his penis into her vaginal opening and anal opening.

The fifth incident occurred between September 21, 2011 and September 22, 2011 when CW was eighteen years old. CW testified that Kaohu was drinking with friends to celebrate his birthday. When Kaohu returned home, he entered CW's room, instructed CW to remove her clothes, and told CW that "he wanted [her] for his birthday." CW testified that Kaohu touched her vaginal area with his hand, and then inserted his penis into her vaginal opening and anal opening.

CW testified that on December 2, 2011, she filed a police report at the Waianae police station. Early on the day Kaohu was arrested, CW returned to Kaohu's house to retrieve clothes. While at the house, she heard Kaohu "getting up" and immediately left the house. CW testified that Kaohu chased her in his car and then on foot, but was not able to catch her. CW called the police, and was instructed to get onto a nearby bus. The police stopped the bus on Farrington Highway and CW got off the bus. CW testified that, at that time, a female police officer overheard a portion of her telephone conversation with Kaohu.

Officer Kaina also testified at trial. Officer Kaina testified that on December 3, 2011, she was sent to Haleakala Avenue to investigate a sexual assault case. Upon her arrival, Officer Kaina observed a female, later identified as CW, "really upset, crying, and on the phone, talking." Officer Kaina testified that she asked CW "who she was talking to, and then she blurted out someone named Theodore." Officer Kaina testified that she overhead CW state "I'm tired of all this sex shit."

Officer Kaina then testified that "I asked again, you know, Hang the phone up; Give me the phone, or whatever. And then I overheard a voice on the phone say, Well, I haven't touched you long time, baby." Officer Kaina did not introduce herself to the individual on the other end of the phone. Officer Kaina testified that CW informed her that the individual on the other end of the phone was Kaohu. Shortly thereafter, Officer Kaina and her partners went to Kaohu's house. Upon arrival at the house, Officer Kaina heard Kaohu speaking with another HPD officer, and recognized Kaohu's voice as "the same voice that was on the phone that [CW] just . . . was talking to." Officer Kaina testified that it was "about ten minutes" between the time she met with CW and the time that she arrived at Kaohu's house.

Wolcott, CW's mother, also testified at trial. Wolcott testified that she moved into Kaohu's house around 2002. Wolcott testified, *inter alia*, about their various children, especially CW, who had at one point ran away from home and then was removed from the home for a period of time. She noted that Kaohu did not approve of CW's boyfriend. Wolcott also testified that she and Deidra opened Kaohu's safe with a crowbar, after his arrest, and found, *inter alia*, his wallet containing a picture of CW, at an early age, but no picture of his own children.

Deidra and Desiree, Kaohu's sisters, also testified at trial. Deidra and Desiree testified that they were both present in the courtroom during portions of CW's testimony. Deidra related that she lived in Kaohu's home from 2007 to 2008. Deidra testified that CW never told her that she was sexually

assaulted by Kaohu. Desiree also testified that CW never told her that she was sexually assaulted by Kaohu.

Kaohu also testified at trial. Kaohu denied all CW's allegations of sexual penetration and sexual contact. Kaohu also denied that he said over the phone, "I haven't touched you in a long time baby." When the prosecutor[5] asked if CW had lied about the sexual assault allegations, Kaohu responded affirmatively. Kaohu also testified that he never threatened CW.

On November 12, 2013, the jury returned a verdict finding Kaohu guilty of Counts 1 through 6, and not guilty of Count 9. The Circuit Court entered a judgment of acquittal as to Count 9. The Circuit Court declared a mistrial as to Counts 7 and 8 because the jury could not reach a unanimous verdict.

On November 21, 2013, Kaohu filed a Motion for a New Trial (**Motion for New Trial**). Kaohu contended that the State failed to properly provide him with all discovery, specifically, Wolcott's written statement to the police about items recovered from Kaohu's safe. Second, Kaohu contended that CW violated the in limine order by testifying as to uncharged prior bad acts, asserting that, although Counts 7 and 8 referenced anal penetration, CW testified that Kaohu penetrated both her anal and genital openings. After further briefing and a hearing, the Circuit Court entered an Order Denying Kaohu's Motion for New Trial on December 13, 2013.

On November 21, 2014, Kaohu filed a Motion to Reconsider Motion to Dismiss Count 3 of the Indictment and For

---

[5]     The prosecutor is also referenced herein as the DPA.

New Trial (**Motion to Reconsider**), arguing that Count 3 fails to allege an essential element of Sexual Assault in the Third Degree, *i.e.*, that Kaohu was not married to CW. Kaohu also requested a new trial as to Counts 2, 4, 5, and 6, on the grounds that he was prejudiced by the defective Indictment. Although the State conceded that "a person not married to the actor" was an essential element to Sexual Assault in the Third Degree, and therefore Count 3 was dismissed with prejudice, the court rejected Kaohu's request for a new trial, stating that it "is not convinced that the rest of the case has been tainted to the point that everything must be vacated and this case tried again." The court explained that the "hung verdicts" in Counts 7 and 8 suggests that the "jury listened to their instructions and considered each [count] separately and apart." Accordingly, the court denied Kaohu's request for a new trial for Counts 1, 2, 4, 5, and 6.

On May 19, 2015, Kaohu was sentenced to consecutive twenty-year terms of imprisonment as to Counts 1, 2, and 4, and concurrent twenty-year terms as to Counts 5 and 6, to be served concurrent to Count 4. On the same day, the Circuit Court entered its Judgment, and Findings of Fact (**FOFs**), Conclusions of Law (**COLs**), and Order Imposing Consecutive Term Sentencing (**Sentencing Order**).

On June 16, 2015, the State filed a Motion for Nolle Prosequi without Prejudice as to Defendant Kaohu, Jr., in Counts 7 and 8, which the Circuit Court granted.

On June 18, 2015, Kaohu filed a notice of appeal.

II.  POINTS OF ERROR

On appeal, Kaohu contends that the Circuit Court erred when it:  (1) precluded evidence of CW's prior sexual assault allegations; (2) precluded evidence of CW's psychological and/or mental health history; (3) refused to allow defense counsel to cross-examine CW about whether she made false accusations against Kaohu's son; (4) allowed HPD Officer Kaina to testify about hearing Kaohu's voice on the telephone; (5) allowed CW's statement on the telephone as an excited utterance; (6) allowed the DPA to question Kaohu and Desiree about the truth of CW's testimony; (7) denied Kaohu's motion for new trial; (8) denied Kaohu's motion to reconsider; and (9) imposed consecutive sentencing.

III.  APPLICABLE STANDARDS OF REVIEW

> The granting or denying of a motion in limine is reviewed for abuse of discretion.  The denial of a motion in limine, in itself, is not reversible error.  The harm, if any, occurs when the evidence is improperly admitted at trial.  Thus, even if the trial court abused its discretion in denying a party's motion, the real test is not in the disposition of the motion but the admission of evidence at trial.

Kobashigawa v. Silva, 129 Hawai'i 313, 320, 300 P.3d 579, 586 (2013) (quoting State v. Eid, 126 Hawai'i 430, 440, 272 P.3d 1197, 1207 (2012)).

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue.  When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.  However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

Kealoha v. Cty. of Hawaii, 74 Haw. 308, 319-20, 844 P.2d 670, 676 (1993). An abuse of discretion "occurs if the trial court 'clearly exceed[ed] the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.'" State v. Hicks, 113 Hawaiʻi 60, 69, 148 P.3d 493, 502 (2006) (quoting State v. Yamada, 108 Hawaiʻi 474, 478, 122 P.3d 254, 258 (2005)) (brackets in original).

When a defendant alleges prosecutorial misconduct, this court must decide: (1) whether the conduct was improper; (2) if improper, whether the misconduct was harmless beyond a reasonable doubt; and (3) if not harmless beyond a reasonable doubt, whether the misconduct was so egregious as to bar reprosecution. State v. Maluia, 107 Hawaiʻi 20, 26, 108 P.3d 974, 980 (2005); State v. Agrabante, 73 Haw. 179, 198, 830 P.2d 492, 502 (1992).

"[T]he granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion." Hicks, 113 Hawaiʻi at 69, 148 P.3d at 502 (quoting Yamada, 108 Hawaiʻi at 478, 122 P.3d at 258).

> A sentencing judge generally has broad discretion in imposing a sentence. The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. Factors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions. And, generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

12

State v. Pecpec, 127 Hawai'i 20, 32, 276 P.3d 589, 601 (2012) (quoting State v. Rauch, 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000)).

IV.  DISCUSSION

A.  Prior Sexual Assault Allegations

Kaohu argues that the Circuit Court erred when it precluded defense counsel from presenting evidence of CW's history of making false rape allegations.

Hawaii's rape shield statute "generally precludes a defendant from introducing evidence of an alleged victim's past sexual behavior." State v. Moisa, No. 30712, 2012 WL 247963 at *3 (Haw. App. Jan. 25, 2012) (SDO) (citing Hawaii Rules of Evidence (HRE) Rule 412).[6]  However, "evidence of *false* statements of unrelated sex assaults are not excluded by the rape shield statute because they are not evidence of sexual conduct." State v. West, 95 Hawai'i 452, 458, 24 P.3d 648, 654 (2001). "Under HRE Rule 608(b)[7], evidence of specific acts, if probative

---

[6]  HRE 412 provides in relevant part:

**Rule 412 Sexual offense and sexual harassment cases; relevance of victim's past behavior.**  (a) Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sexual offense, reputation or opinion evidence of the past sexual behavior of an alleged victim of the sexual offense is not admissible to prove the character of the victim to show action in conformity therewith.

[7]  HRE Rule 608 (2016) provides in relevant part:

**Rule 608  Evidence of character and conduct of witness.** (a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:

(continued...)

13

of truthfulness, may be introduced for the purposes of attacking the credibility of a witness." Id. The Hawai'i Supreme Court held that "where a defendant seeks to admit allegedly false statements made by a complainant regarding an unrelated sexual assault, the trial court must make a preliminary determination based on a preponderance of the evidence that the statements are false." Id. at 460, 24 P.3d at 656. Moreover, "where the trial court is unable to determine by a preponderance of the evidence that the statement is false, the defendant has failed to meet his or her burden, and the evidence may be properly excluded." Id.

In the instant case, in paragraph 3 of its motion in limine, the State requested, inter alia, an order excluding and precluding from use at trial any past sexual history evidence of CW as irrelevant and unfairly prejudicial. At the hearing on the State's motion, defense counsel notified the court that he might seek to introduce evidence of CW's prior sexual assault allegations at trial. The following exchange took place:

---

[7](...continued)
    (1)   The evidence may refer only to character for truthfulness or untruthfulness, and
    (2)   Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
   (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking the witness' credibility, if probative of untruthfulness, may be inquired into on cross-examination of the witness and, in the discretion of the court, may be proved by extrinsic evidence. When a witness testifies to the character of another witness under subsection (a), relevant specific instances of the other witness' conduct may be inquired into on cross-examination but may not be proved by extrinsic evidence.

14

THE COURT: What would be the purpose of introducing that evidence?

[DEFENSE COUNSEL]: Well, it would go to the fact that -- I mean, this particular case, she's made allegations before. It's our position that an allegation was made previously, but those allegations resulted in no charges, and the case here will be an issue of credibility.

It is our position that the witness has lied before in a similar and same circumstance, and she's doing it again, and that would be our position. Not because she is sexually active or was sexually active or had prior partners, simply to the point that she's made allegations before, the same type of allegations, and she'll make it against anyone, and it has been unfounded, and that there's a reason for that -- because she's lied and she's lied before.

THE COURT: [Defense counsel], what evidence is there that her allegations were unfounded?

[DEFENSE COUNSEL]: Well, we've asked the government to see -- well, Mr. Kaohu as I think you are aware of, was in fact the stepfather of the [CW] in this case, they lived in the same household. And to Mr. Kaohu's knowledge, no convictions were ever obtained, the charges were never upheld. That's to his knowledge.

THE COURT: All right. If I understand correctly, I think your position is that the defendant would testify that the complaining witness had reported these things before?

[DEFENSE COUNSEL]: Yes, the allegations in school.

THE COURT: And as far as he knew, they were not substantiated?

[DEFENSE COUNSEL]: That's correct.

THE COURT: Any other relevance that you're seeing with that evidence; any other relevance as to the purpose of that evidence?

[DEFENSE COUNSEL]: Well, when the [CW] is angry at somebody, when the [CW] has issues with other individuals, that she makes certain allegations, and these types of allegations being one of them, and that that is the same circumstances that we have here, that Mr. Kaohu and the [CW] for whatever reason had some issues, and that's why she made up these allegations.

I'm not sure if the Court is aware through the hearing throughout the trial, Mr. Kaohu confronted the [CW] when the [CW] was with an adult male, and then the allegations against Mr. Kaohu occurred. So it's our position that whenever the [CW] has an issue with someone, she makes these types of allegations to the point that she'll call the authorities, and that's what happened in this case.

THE COURT: Well, thank you for clarifying that, because I do not understand this motion that's being brought

15

by the government to exclude Mr. Kaohu's testimony that he had these conversations with the [CW] in which he talked to her about her personal life and he believes that she became angry at him. I wouldn't exclude that if that's the statement as to what he communicated to the [CW] about during the time that the alleged incidents took place.

But with respect to these specific incidents that she reported regarding the individuals that raped her, I did not find that to be sufficiently relevant to justify admission in this case and would be a violation of Rule 412; and, accordingly, that testimony or any testimony regarding her reporting of rapes to the school by boys would be excluded.

Defense counsel appeared to offer the lack of "charges" and "convictions" as evidence of the falsity of CW's allegations. However, "the failure to investigate or prosecute does not establish the falsity of the statements." West, 95 Hawai'i at 461, 24 P.3d at 657. Upon review of the record, at most, Kaohu demonstrated that the truth or falsity of CW's prior sexual assault allegations was unknown. Therefore, Kaohu failed to meet his burden to show by a preponderance of the evidence that CW's statements were false. Id. Accordingly, we cannot conclude that the Circuit Court erred in determining that CW's prior sexual assault allegations would violate HRE Rule 412 and should be excluded from trial. See id. at 459, 24 P.3d at 655.

B.   CW's Psychological History

Kaohu argues that the Circuit Court's grant of the State's motion in limine, and refusal to allow defense counsel to present "evidence of [CW's] history of emotional, psychological and mental health problems affecting her credibility" violated his right to confrontation under the Sixth Amendment to the United States Constitution and article I, section 14 of the

16

Hawai'i Constitution.[8]  Citing <u>State v. Balisbisana</u>, 83 Hawai'i 109, 115, 924 P.2d 1215, 1221 (1996), Kaohu contends that CW's psychological history and mental health treatment were relevant to show her bias and motive.

The supreme court has recognized that "bias, interest, or motive is *always relevant*" under HRE Rule 609.1.  <u>State v. Levell</u>, 128 Hawai'i 34, 40, 282 P.3d 576, 582 (2012) (citation and brackets omitted).  Under HRE Rule 609.1, "[t]he credibility of a witness may be attacked by evidence of bias, interest or motive."  "The trial court's determination that the proffered evidence is probative of bias, interest or motive is reviewed under the right/wrong standard."  <u>Balisbisana</u>, 83 Hawai'i at 114, 924 P.2d at 1220.

In <u>Balisbisana</u>, defendant was convicted of abuse of a family or household member.  <u>Id.</u> at 111, 924 P.2d at 1217.  On appeal, defendant contended that the trial court violated his right to confrontation when it excluded references to the complaining witness's conviction for harassing the defendant. <u>Id.</u> at 113, 924 P.2d at 1219.  The supreme court recognized that "the trial court's discretion in exercising control and excluding evidence of a witness's bias or motive to testify falsely becomes operative only after the constitutionally required threshold

---

8    The Sixth Amendment to the United States Constitution provides in relevant part, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him[.]"  U.S. Const. amend. VI.  Article I, section 14 of the Hawai'i Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against the accused[.]" Haw. Const. art. I, § 14.

level of inquiry has been afforded the defendant." Id. at 114, 924 P.2d at 1220. The appropriate inquiry "is whether the jury had sufficient information from which to make an informed appraisal of [the complaining witness's] motives and bias, absent evidence of her conviction for harassing [defendant]." Id. at 116, 924 P.2d at 1222. Once a defendant is afforded the threshold level of inquiry under the confrontation clause, a trial court may exclude evidence of bias, interest, or motive "under HRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Levell, 128 Hawai'i at 39, 282 P.3d at 581 (citing Balisbisana, 83 Hawai'i at 114, 924 P.2d at 1220). The trial court's prohibition of all inquiry into the complaining witness's conviction in Balisbisana was an abuse of discretion "because, in the absence of that evidence, the jury did not have a sufficient basis from which to make an informed appraisal of the complaining witness's alleged bias and motive." Id. (citing Balisbisana, 83 Hawai'i at 116, 924 P.2d at 1222).

Here, Kaohu argued that "[w]henever [CW] doesn't get her way, she gets angry. But more important, besides being angry, she knows what to do, she knows how to play the system, and she takes it out by making accusations against other individuals." The Circuit Court granted the State's request as to paragraphs 4, 5, and 6 of the State's motion in limine (set

forth above). The Circuit Court determined that CW's mental health history was not relevant and found that the "prior incidents that might have involved breaking of jalousies or acting out violently do not appear to be identified in a particular time that would pertain to the incidents in this case, nor do those actions seem to be relevant to her state of mind[.]"

During cross-examination, Wolcott was asked about CW's removal from the home. Defense counsel asked to approach the bench, and requested that the court reconsider "the issue of . . . the [CW's] state of mind, her bipolar, her other actions that the Court prohibited," explaining:

> I need to get [Wolcott] to say what she has told the detective, that the reason [CW] was behaving the fashion she was behaving is because she's bipolar, she was taken to Kahi Mohala, that she acts -- she behaves in that fashion. Without being able to ask these questions, Your Honor, it hinders my ability to cross-examine the witness and resulting in Mr. Kaohu's right to a fair trial. As the Court can see from the [CW] itself, the first witness, it's very difficult to represent and to get the facts and the truth out when we are prohibited from asking relevant questions as to why a person would make these allegations, which are the person's state of mind, the person's medical state of mind, physical appearance, and all of those things which the Court has prohibited.

The Circuit Court ruled:

> The witness's opinion as to why the [CW] was behaving in a certain way would be irrelevant. But questions about how the [CW] was behaving certainly is something that you've got into and you can get into. And the questions about her opinion -- that is, the witness's opinion of the complaining witness's mental health -- would also be irrelevant. And I don't think she's qualified to speak about an actual diagnosis of mental illness. But again, you can describe an emotional state of the [CW] through this witness. I wouldn't limit you in that way.

Kaohu contends that CW's psychological history and mental health treatment was relevant to establish her bias and motive, and thus, the exclusion of this evidence violated his

19

right to confrontation. However, the Circuit Court allowed cross-examination of CW about her bias or motive to fabricate her claims against Kaohu. Specifically, the Circuit Court allowed the defense to establish, *inter alia*, through CW's testimony: that she would get into arguments with her mother and Kaohu; that Kaohu would restrain her when she physically resisted her mother; that the police removed CW from the home; that she would run away from home because she didn't want to see Kaohu; that Kaohu would threaten her; that Kaohu had hit her with his car; and that she was upset that Kaohu told her that she could not be with her boyfriend. As such, "the jury had sufficient information from which to make an informed appraisal of [CW's] motives and bias, absent evidence of" CW's psychological history and mental health treatment. See Balisbisana, 83 Hawai'i at 116, 924 P.2d at 1222. Therefore, Kaohu was afforded a level of inquiry on cross-examination sufficient to satisfy the Confrontation Clause of the Sixth Amendment to the United States Constitution.

As Kaohu was afforded the threshold level of inquiry under the Confrontation Clause, the Circuit Court was permitted to "exercise its discretion under HRE 403 and balance the prejudicial effect against the probative value of exposing the jury to evidence" of CW's psychological history and mental health treatment. Kaohu failed to explain how CW's psychological history and mental health treatment showed CW's bias or motive to fabricate her allegations. Moreover, the potential prejudicial

effect of CW's psychological history and mental health treatment is significant. As such, we conclude that the Circuit Court did not err when it excluded evidence of CW's psychological history and mental health treatment.

C.    Allegations Against Kaohu's Son

Kaohu argues that the Circuit Court erred when it precluded defense counsel from cross-examining CW on whether she made false allegations against Kaohu's son. As discussed above, "where a defendant seeks to admit allegedly false statements made by a complainant regarding an unrelated sexual assault, the trial court must make a preliminary determination based on a preponderance of the evidence that the statements are false." West, 95 Hawai'i at 460, 24 P.3d at 656. Furthermore, "where the trial court is unable to determine by a preponderance of the evidence that the statement is false, the defendant has failed to meet his or her burden, and the evidence may be properly excluded." Id.

Here, the Circuit Court granted the State's motion in limine "with respect to the relationship or sexual history with the stepbrother." Then, during cross-examination of CW, defense counsel asked whether there were "any issues between you and [Kaohu's son]?" The State objected and the court sustained the objection. At the bench, defense counsel explained that, when CW was interviewed by the detective, CW alleged that "Kaohu's son had done the same thing to her but nothing came out of it. There was no arrest." Counsel argued that CW's allegations about

Kaohu's son was relevant to CW's "credibility, bias, and motive." The court asked the DPA about the nature of the information in the interviews, the DPA answered, "I'm not sure if it was in [CW's] or if it was in the mom's, that there might have been something going on between [CW] and her stepbrother." The court then sustained the State's objection. Defense counsel requested that he be allowed to "get the transcripts and place it on the record as to the statement made by the witness to the detective so that we have a more clear record."

Later that day, outside of the jury's presence, defense counsel stated:

> [T]he offer of proof would have been, with respect to the cross-examination regarding [Kaohu's son], that had nothing to do with sexual behavior, had nothing to do with whether the [CW] had engaged in sexual encounters that has no relation to this case. It simply had to do with the credibility of the witness and the motive and bias of the witness. Because upon review of the discovery here, [CW] was interviewed by Detective Rockett, and the question did come up. The detective asked the [CW], Did you have anything going on with your stepbrother? And that's on page 127 of the police reports. And the answer was, Yes, yeah.
>
> . . . .
>
> How long ago? When did he move out?
>
> My -- I think my ninth grade year he moved out.
>
> So when you had this thing -- when you had your thing with him, you were what? You were 14?
>
> I was 11.
>
> So the reference and the line of questioning there is consistent with the CW saying that something happened between me and someone else in the household. But we do know, as an officer of court, upon review of all the records, talking to the witness, that there was no arrest made of [Kaohu's son], but we do know that the nature and line of the questioning clearly implicates that she and the son, Kaohu son, had engaged in something. And the fact that no investigation was made and no arrest was made goes directly to the heart of she's made accusations before and

those accusations were not true. So it goes straight to credibility, has nothing to do with her past sexual behavior.

Kaohu contends that CW's statements to Detective Rockett regarding his son "show[ed] that [CW] had a history of making false allegations." However, CW's response to Detective Rockett's vague question does not support Kaohu's proposition that CW made a false allegation against Kaohu's son. Kaohu also argued that the lack of investigation evidenced the falsity of CW's allegations. However, "the failure to investigate or prosecute does not establish the falsity of the statements." West, 95 Hawai'i at 461, 24 P.3d at 657. The truth or falsity of CW's purported prior sexual assault allegation was unknown. Therefore, we cannot conclude that the Circuit Court erred when it precluded defense counsel from cross-examining CW regarding her allegations against Kaohu's son.

D.    Kaohu's Statement on the Telephone

On appeal, Kaohu argues that the Circuit Court erred when it allowed Officer Kaina to testify regarding Kaohu's statement to CW, "I haven't touched you in a long time, baby."[9] Kaohu argues that Officer Kaina's testimony should have been excluded under HRE 403.

HRE Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

———————————

[9]    According to Officer Kaina's testimony, this statement was made by Kaohu in response to CW's statement that, "I'm tired of this sex shit."

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." This balance is based on "the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence will probably rouse the jury to overmastering hostility." State v. Bates, 84 Hawai'i 211, 228, 933 P.2d 48, 65 (1997) (quoting State v. Renon, 73 Haw. 23, 38, 828 P.2d 1266, 1273, reconsideration denied, 73 Haw. 625, 858 P.2d 734 (1992) (citations and footnote omitted)). The admissibility of relevant evidence under HRE 403 "is eminently suited to the trial court's exercise of its discretion because it requires a cost-benefit calculus and a delicate balance between probative value and prejudicial effect." State v. McCrory, 104 Hawai'i 203, 207, 87 P.3d 275, 279 (2004) (quoting Sato v. Tawata, 79 Hawai'i 14, 19, 897 P.2d 941, 946 (1995)).

The probative value of Officer Kaina's testimony regarding Kaohu's statement was high, given the nature of the charges against him. At trial, CW testified that Kaohu subjected her to multiple acts of sexual penetration and sexual contact. Kaohu denied all incidents of sexual penetration and sexual contact. As Professor Bowman notes, "[i]f probative value is great, the evidence will be admitted even though equally great prejudice must be risked." Addison M. Bowman, Hawaii Rules of Evidence Manual § 403-1 (2016-17 ed). Given the broad discretion afforded to a trial court, we conclude that the Circuit Court did not abuse its discretion in permitting Officer Kaina's testimony.

E.     CW's Statement To Kaohu

Kaohu contends that the Circuit Court erred when it allowed Officer Kaina's testimony regarding CW's statement, "I'm tired of this sex shit" as an excited utterance.

HRE Rule 802 (2016) states in relevant part that "[h]earsay is not admissible except as provided by these rules[.]"  One of the exceptions to the exclusion of hearsay, set forth in HRE Rule 803(b)(2) (2016), is that an "excited utterance" is not excluded.

Before addressing whether this hearsay exception applies, however, we consider whether CW's statement was admissible as non-hearsay, *i.e.*, admissible for reasons other than to prove the truth of the matter asserted.  Numerous courts have held that statements providing context for other admissible statements are not hearsay because they are not offered for their truth.  See, e.g., United States v. Cruz-Diaz, 550 F.3d 169, 176 (1st Cir. 2008); United States v. Neuman, 406 F. App'x 847, 850 (5th Cir. 2010); United States v. Wilson, 653 F. Appx 433, 443 (6th Cir. 2016); United States v. Woods, 301 F.3d 556, 561 (7th Cir. 2002); United States v. Tolliver, 454 F.3d 660, 666 (7th Cir. 2006); United States v. Cooke, 675 F.3d 1153, 1156 (8th Cir. 2012); United States v. Echeverry, 759 F.2d 1451, 1457 (9th Cir. 1985); United States v. Valdes-Fiallo, 213 F. App'x 957, 959-60 (11th Cir. 2007); Estes v. State, 249 P.3d 313, 315-16 (Alaska Ct. App. 2011); State v. Norris -- N.E.3d --, 2016 WL 4728447 at *8 (Ohio Ct. App., 2nd Dist., Sept. 9, 2016); Kimball v. State,

24 S.W.3d 555, 564 (Tex. App. 2000). That analysis applies in this case.

Here, the admission of CW's statement that "I'm tired of this sex shit" was necessary to provide context to Kaohu's response that "I haven't touched you in a long time, baby." Thus, Officer Kaina's testimony regarding CW's statement was admissible as non-hearsay to provide context to Kaohu's response. Accordingly, we find no reversible error in the admission of CW's statement and need not address whether the requirements for the excited utterance exception to the hearsay rule were met.

F.    Prosecutorial Misconduct

Kaohu contends that the DPA committed prosecutorial misconduct when she repeatedly asked Desiree and Kaohu whether CW lied in her testimony. We agree.

In Maluia, the Hawai'i Supreme Court specifically addressed this issue and held that "the prosecution may not ask a defendant to comment on another witness's veracity." Maluia, 107 Hawai'i at 24, 108 P.3d at 977. The supreme court enumerated and explained several reasons why "were-they-lying" question are improper, including, *inter alia*, that such questions invade the province of the jury and they are argumentative, they are inherently unfair, and they create a "no-win" situation for the defendant. Id. The supreme court further held that such questions constitute prosecutorial misconduct, requiring analysis of whether the conduct was harmless beyond a reasonable doubt. Id. at 25, 27, 108 P.3d at 978, 980.

26

Here, during the DPA's cross-examination of Desiree, the DPA asked Desiree, roughly six times, whether she was saying that CW had lied at trial and to the police. This was impermissible under <u>Maluia</u>. However, the DPA's cross-examination appears to have been, at least in part, an attempt to address Desiree's direct testimony. Desiree had been asked by defense counsel about CW's trial testimony, wherein CW testified that she had told Desiree about Kaohu's alleged sex abuse. In reference to CW's testimony, Desiree testified, "[t]hat was not true."

During the DPA's cross-examination of Kaohu, the following colloquy took place:

> [DPA]: You never touched [CW] on the vagina?
>
> [Kaohu]: No.
>
> [DPA]: You're saying she lied about that?
>
> [Kaohu]: Yes.
>
> [DPA]: . . . you never inserted your finger into her vagina?
>
> [Kaohu]: Nope.
>
> [DPA]: So she lied about that, too?
>
> [Kaohu]: Yes.
>
> [Defense counsel]: Your Honor, argumentative.
>
> THE COURT: Objection is overruled.
>
> [DPA]: You never inserted your penis into her vagina?
>
> [Kaohu]: No.
>
> [DPA]: So she lied about that, as well?
>
> [Kaohu]: Yes.
>
> [DPA]: You never threatened to kill her?
>
> [Kaohu]: No.
>
> [DPA]: Or her mom?

[Kaohu]: No.

[DPA]: So she's lying about all of that?

[Kaohu]: Yes, she is.

. . . .

[DPA]: You never put your penis in [CW's] mouth?

[Kaohu]: No.

[DPA]: She lied about that, as well?

[Kaohu]: Yes.

[DPA]: You never put your penis into her anal opening?

[Kaohu]: No.

[DPA]: She lied about that?

[Kaohu]: Yes.

The prosecutor's numerous "did-she-lie" questions violated the supreme court's holding in Maluia and constituted prosecutorial misconduct. Thus, the Circuit Court erred in overruling Kaohu's objections. Accordingly, we turn to whether the prosecution's misconduct was harmless beyond a reasonable doubt. Maluia, 107 Hawai'i at 27, 108 P.3d at 980.

"In order to determine whether the alleged prosecutorial misconduct reached the level of reversible error, we consider the nature of the alleged misconduct, the promptness or lack of a curative instruction, and the strength or weakness of the evidence against defendant." Agrabante, 73 Haw. at 198, 830 P.2d at 502. We consider the Agrabante factors as follows.

Here, the prosecutor's conduct was in direct violation of the supreme court's holding in Maluia. However, in discussing the nature of this type of misconduct, the supreme court in Maluia also stated that:

28

> the conduct was less egregious than that presented in those cases where we vacated the defendants' convictions and remanded for new trials. See, e.g., State v. Wakisaka, 102 Hawai'i 504, 78 P.3d 317 (2003) (vacating and remanding where the prosecution improperly commented on the defendant's failure to testify); State v. Pacheco, 96 Hawai'i 83, 95, 26 P.3d 572, 584 (2001) (vacating and remanding where "the [prosecution's] characterization of [the defendant] as an 'asshole' strongly conveyed his personal opinion and could only have been calculated to inflame the passions of the jurors and to divert them, by injecting an issue wholly unrelated to [the defendant's] guilt or innocence into their deliberations, from their duty to decide the case on the evidence"); State v. Marsh, 68 Haw. 659, 728 P.2d 1301 (1986) (vacating and remanding where the prosecutor, in closing, repeatedly stated her personal belief that the defendant was guilty).

Maluia, 107 Hawai'i at 27, 108 P.3d at 981.

In this case, the main theory of Kaohu's defense was that CW was lying about the sexual abuse. The testimony elicited by his attorney was directed principally at undermining CW's credibility, casting her as a defiant, difficult, and angry child who lied about the abuse. Thus, although the DPA improperly engaged in did-she-lie questions, even without the improper questions, it was clear that Kaohu was in fact asserting that CW was lying about the alleged incidents of sexual assaults.

As to the second Agrabante factor, there were no curative instructions, as Kaohu's objections were overruled and the improper questions were permitted.

Finally, we consider the strength of the evidence in this case. We are mindful that, "[i]n close cases involving the credibility of witnesses, particularly where there are no disinterested witnesses or other corroborating evidence, [the supreme] court has been reluctant to hold improper statements harmless." State v. Tuua, 125 Hawai'i 10, 17, 250 P.3d 273, 280

(2011). However, in this case, in addition to the conflicting testimony of CW and Kaohu, there is, *inter alia*, Star's testimony and Officer Kaina's testimony, which corroborated CW's testimony. Star, who is Kaohu's daughter and not related by blood to CW, observed that her father was "more affectionate" to CW, described by Star as "more hugging, [he would] touch her more . . . [j]ust touch her more, I guess[.]" She also testified about a time that:

> [W]e were in the car and we were driving home from his job and a conversation came about boyfriends, and dad was stating how he thought we could have a lot of boyfriends, have a lot of sex because we'd have loose pussies, and he said something about [CW's] pussy being tight compared to my stepmom, whose pussy was loose."

As discussed above, Officer Kaina testified that she observed CW talking to Kaohu on her cellular phone. CW was crying and told Kaohu, "I'm tired of all this sex shit!" Officer Kaina then put the phone to her ear and heard Kaohu respond, "Well, I haven't touched you [in a] long time, baby.'" In addition, there was various circumstantial evidence, such as CW's picture in Kaohu's wallet, and reasonable inferences therefrom, that supported the jury's verdict.

After carefully considering the <u>Agrabante</u> factors in light of the entire record in this case, we conclude that the DPA's prosecutorial misconduct was harmless beyond a reasonable doubt.

G.    Motion for New Trial and Motion to Reconsider

Kaohu asserts that the Circuit Court erred when it denied Kaohu's motion for new trial, as well as his motion to reconsider his request for a new trial.

Hawai'i Rules of Penal Procedure Rule 33 provides in relevant part that "[t]he court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice."

As to Counts 7 and 8, CW testified that Kaohu penetrated her genital as well as her anal opening, which was contrary to her prior statements.  Although the Circuit Court declared a mistrial as to Counts 7 and 8, because the jury could not reach a unanimous verdict, Kaohu contends that the jury took into account CW's testimony as to Counts 7 and 8 in its consideration of Counts 1 through 6, and therefore he was prejudiced.

The Circuit Court, however, instructed the jury that:

> The Defendant, Theodore Kawika Kaohu, Jr., is charged with more than one offense under separate counts in the indictment.  Each count and the evidence that applies to that count is to be considered separately.  The fact that you may find the defendant not guilty or guilty of one of the counts charged does not mean that you must reach the same verdict with respect to any other count charged.

It is presumed that the jury adhered to the Circuit Court's instructions.  State v. Webster, 94 Hawai'i 241, 248, 11 P.3d 466, 473 (2000).  There is no reason to believe that the jury was unable to consider the evidence for each count without reference to the other counts.  In fact, given the mixed verdict,

31

it appears that the jury did in fact heed the court's instruction. We conclude that the Circuit Court did not abuse its discretion in denying Kaohu's motion for new trial.

Similarly, Kaohu contends that the jury improperly heard evidence regarding Counts 3 and 9, and that this evidence tainted the remaining counts. Again, the jury's verdict demonstrated its ability to properly apply the evidence adduced to each count. We conclude that the Circuit Court did not abuse its discretion in denying a new trial based on this argument.

H.    Sentencing

Kaohu argues that the Circuit Court erred when it imposed consecutive sentences in this case, contending that punishment was so disproportionate to the criminal conduct that it constituted constitutionally infirm cruel and unusual punishment, that the Circuit Court's findings were clearly erroneous, and that the lengthy sentence was not warranted because CW did not suffer an actual physical injury. The Circuit Court's reasoning, after considering the HRS § 706-606 factors, was sound, supported by these factors, and stated on the record. We conclude that these arguments are without merit.

Likewise, Kaohu's argument that his consecutive sentences were in violation of Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), is without merit. See State v. Kahapea, 111 Hawai'i 267, 279-80, 141 P.3d 440, 452-53 (2006).

Nevertheless, the Hawai'i Supreme Court's recent decision in State v. Barrios, 139 Hawai'i 321, 337-38, 389 P.3d

32

916, 932-33 (2016), requires that "sentencing courts must state on the record the HRS § 706-606 factors that support <u>each</u> consecutive sentence." (Emphasis added.) Here, the Circuit Court ordered that the twenty-year sentence for Count 2 be consecutive to the twenty-year sentence for Count 1 and that the twenty-year sentence for Count 4 be consecutive to both Counts 1 and 2. The Circuit Court did not, as required by <u>Barrios</u>, adequately articulate the factors that support each of the multiple consecutive sentences. Therefore, we must vacate the portion of the Judgment sentencing Kaohu to multiple consecutive terms of imprisonment.

V.    CONCLUSION

For the foregoing reasons, we vacate in part the Circuit Court's May 19, 2015 Judgment, to the extent that it imposed consecutive sentences, and remand to the Circuit Court for resentencing before a different judge. <u>See</u> <u>Barrios</u>, 139 Hawai'i at 339, 389 P.3d at 934. The Judgment is otherwise affirmed.

DATED: Honolulu, Hawai'i, April 28, 2017.

On the briefs:

Dwight C.H. Lum,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Craig H. Nakamura
Chief Judge

Associate Judge

Associate Judge

33